John T. HENRY and Evelyn I.
Henry, Plaintiffs,

v.

FARMER CITY STATE BANK, an Illinois Banking Corporation, George E. Drake, Dean Bright, Richard K. Drake, Robert E. Drake, Stuart B. Drake, F. Dick Maxwell, Ortheldo A. Peithman, Beryl W. Rutledge, James E. Tobin, William A. Rutledge, Ronald L. Vance, Cheryl Dawson, John N. Stevens, Stephen Peters, Donald Massey, James W. Evans, Terry Scott, City of Farmer City, a municipal corporation, Marvin Haycraft, James Richmond, Bill Perhay, Bill Perhay Chevrolet Inc., Phillip R. Lamkin, Raymond Moss, Obermeyer Transfer Co., Dennis Johnson, Oscar Ogle, and the Champaign National Bank, a National Banking Association, Defendants.

No. 85–3365.

United States District Court,
C.D. Illinois,
Springfield Division.

Dec. 17, 1985.

See also, 630 F.Supp. 844.

Jack C. Vieley, Peoria, Ill., for plaintiffs.

Carol J. Hansen Fines, Giffin, Winning, Lindner, Cohen & Bodewes, Springfield, Ill., for Phillip Lamkin.

Howard W. Small, Thomas, Mamer & Haughey, Champaign, Ill., for Stephen Peters & Donald Massey.

Wayne L. Hanold, James Morrison, Arthur G. Greenberg, Daniel L. Johns, Westervelt, Johnson, Nicoll & Keller, Peoria, Ill., for other defendants.

James C. Kearns, Heyl, Royster, Voelker & Allen, Urbana, Ill., for James Evans.

Rudasill & Rudasill, Clinton, Ill., for Obermeyer Transfer Co. & Marvin Haycraft.

Gregory Gammage, Gammage Law Offices, Farmer City, Ill., for James Richmond.

Arnold F. Blockman, Jerome P. Lyke, Hatch, Blockman, McPheters & Fehrenbacher, Champaign, Ill., for Terry Scott & City of Farmer City, & Donald Massey.

John Naylor, Naylor, Mueller & Willard, Bloomington, Ill., for Bill Perhay and Bill Perhay Chevrolet, Inc.

William A. Peithmann, Farmer City, Ill., for Farmer City State Bank, G. Drake, Dean Bright, Rich Drake, Robert Drake, St. Drake, F. Maxwell, Ortheldo Peithmann, Beryl Rutledge, J. Tobin, W. Rutledge, R. Vance, C. Dawson, D. Johnson, O. Ogle.

Susan M. Hickman, Charles H. Cole, Hinshaw, Culbertson, Moelmann, Hoban & Fuller, Springfield, Ill., for Raymond Moss.

## OPINION AND ORDER OF DISMISSAL

MILLS, District Judge.

Is a RICO violation alleged here?

Absolutely not.

Plaintiffs' claim arises out of an ordinary mortgage foreclosure in state court. The defendant mortgagors purportedly forged a "letter of direction" to the Plaintiffs' land trustee, which directed the trustee to place a second mortgage on Plaintiffs' oil and tire company to help secure a prior indebtedness worth $345,000. The bank subsequently foreclosed on this second mortgage. Plaintiffs brought this specious suit to recoup their losses sustained in the foreclosure and later bankruptcy actions.

Plaintiffs have sued everyone in sight: the auctioneer who cried the foreclosure sale, the moving company that confiscated the personal property, the chief of police, the State's Attorney of DeWitt County, the Sheriff of DeWitt County, the City of Farmer City, the Chevrolet dealer and dealership who moved into the property in question after the defendant bank was given possession, the Champaign National Bank which was the land trustee, as well as all attorneys, bank directors, and officers of the defendant bank (who are collectively designated as FCSB Defendants).

All of the peripheral, non-FCSB Defendants, have been dismissed out and we are now left with the FCSB Defendants, namely Farmer City State Bank, an Illinois Banking Corporation, and its officers and directors: George E. Drake, Dean Bright, Richard K. Drake, Robert E. Drake, Stuart B. Drake, F. Dick Maxwell, Ortheldo A. Peithman, Beryl W. Rutledge, James E. Tobin, William A. Rutledge, Ronald L. Vance, Cheryl Dawson, Dennis Johnson, and Oscar Ogle. Their motion to dismiss is ALLOWED.

Plaintiffs allege as predicate acts, upon which to base their RICO claim, mail and wire fraud, and extortion. They allege that they have been injured in their "business and property by reason of a violation of 18 U.S.C. § 1962", because their real and personal property has been foreclosed on, confiscated, and sold by order of the DeWitt County Circuit Court at the insistence of Defendants.

In order to have RICO cause of action, the above injury to business or property must come about because the Defendants (1) conducted (2) an enterprise (affecting interstate commerce) (3) through a pattern of (4) racketeering activity. *Sedima S.P. R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985).

## I

No pattern of racketeering is adequately alleged. Plaintiffs allege generally that there have been "repeated violations" of mail fraud and wire fraud; however, this conclusion is not substantiated by any supporting specific facts. Indeed, the Court is left to guess what constitutes the mail and wire fraud that is supposed to be the basis of this suit. (Thus, not even the predicate acts needed to sustain this action are adequately pled.)

The Supreme Court in *Sedima S.P.R.L.*, 105 S.Ct. at 3285, fn. 14, quoted the Senate Report for a definition of what is meant by a pattern of racketeering, to-wit:

The target of [RICO] is ... not sporadic activity. The infiltration of legitimate business normally requires more than one 'racketeering activity' and the threat of continuing activity ... It is this factor of *continuity plus relationship* which combines to produce a pattern. (Emphasis the Court's.) ... The term pattern requires the showing of a relationship ... Proof of two acts of racketeering activity, without more, does not establish a pattern ... (Cites omitted.)

We have no showing of continuity plus relationship; if anything, there is only the allegation of one sporadic incident, that of one forgery of a letter of direction to place a second mortgage on Plaintiff's property to secure a debt already owed by Plaintiffs

to the Defendants (discussed *infra*) with no specific allegations to establish the mail and wire fraud.

This single alleged forgery cannot sustain a RICO claim since forgery alone is not a predicate act under § 1961(1) nor do the allegations establish a pattern of racketeering.

## II

■ It is alleged that this letter of direction and subsequent foreclosure suit was an attempt to collect an unlawful debt of $345,000. *See* Complaint, Count 1, ¶¶ 35, 43, 46, and 48.

The debt apparently originated with a prior loan dated February 7, 1980, and mortgage with the Defendant Bank, dated February 20, 1980, Document Number 119663 recorded DeWitt County Vol. 128, p. 257 (Defendants' Exhibit 19, mortgage filed 2/20/80, docu. no. 119663, DeWitt County Recorder of Deeds, Vol. 128, p. 257). Thus, the allegation that Defendants entered into a pattern of racketeering to collect an illegal debt is patently false because the acts which are pled to sustain the claim here have nothing to do with creating a debt, they only created a second mortgage that secured a preexisting debt. Moreover, no attempt is made to allege that the original debt was really created illegally, such as through gambling or a loan at a usurious rate or other acts of racketeering. Thus, there is no adequate allegation that Defendants were collecting an illegal debt.[1]

## III

■ In order to have a valid civil RICO claim, the requirements of 18 U.S.C. § 1964(c) must be met. That requirement is that the Plaintiff must suffer "injury in his business or property by reason of a violation of § 1962 ..." No such injury has occurred.

Allegedly Plaintiffs were "injured in their business and property" because the forged "letter of direction" allowed Defendants' to foreclose on, and take possession of, their business. However, at the time the letter of direction was executed, the Plaintiff *had already assigned* the subject property to the bank, as "collateral security for payment of any principal and interest of the assignors ... [the Plaintiffs], *now* or *hereafter* payable to the order of Farmer City State Bank ..." (Emphasis added.) (See Defendants' Exhibit No. 17, a.k.a. "assignment" docu. no. 113867, filed with DeWitt County Recorder of Deeds 4/18/78, book 201, page 40.) Thus, at the time the letter of direction was executed and allegedly forged on 7/24/80, the title to the property was already encumbered by the defendant bank with prior debts, such as the $345,000 debt which was the subject matter of the second mortgage in the "letter of direction." (See Defendants' Exhibit 19, mortgage filed 2/20/80, docu. no. 119663, DeWitt County Recorder of Deeds, Vol. 128, p. 257). It appears that the bank had two avenues of relief left to it when the Plaintiffs began defaulting on their loans—(1) the bank could have exercised their rights under the assignment, or (2) foreclosed on the second mortgage created by the letter of direction (which is the route Defendants traveled).

Thus, when the letter of direction was created, no RICO violation (as alleged here) could have occurred, since the only thing that could arguably be the RICO injury here was the power of the bank to confiscate Plaintiffs' property, which was created before the "letter of direction." No claim

---

1. Plaintiffs also claim that the alleged forgery of the letter of direction to the trustee created an illegal debt. *See* Plaintiff's "memo of law in response to Defendants' motions to dismiss", *filed* 10/31/85, d/e 131, § 4, p. 14. This, however, is impossible. The letter of direction in question directs the trustee of Plaintiff's land trust to execute a second mortgage re-encumbering the oil and tire company property with the indebtedness of $345,000 created 2/7/80. Thus, the letter of direction could not possibly "lead to imposition of an unlawful debt", as that debt of $345,000 pre-existed the letter of direction and the records before the court indicate that the debt was legal. (At least there is no indication or allegation that the prior loans and collateral arrangements were fraudulent.)

is made that the assignment—which gave the bank the ability to confiscate Plaintiffs' property—was forged or otherwise illegal. Therefore, the RICO violation is also not validly pled because no § 1964(c) injury is before the Court, since the alleged injury suffered by Plaintiffs would have occurred whether or not the alleged forgery took place. This is because the property in question belonged to the bank until the various debts of Plaintiff had been satisfied due to the assignment.

### IV

No claim has been made upon which RICO relief can be granted: the predicate acts are not adequately pled, only unsupported conclusions of law are alleged; there are no specific factual allegations of fraud and no specific allegation of transmissions of fraud by the mail or wires; and no pattern of racketeering has been adequately pled since only one allegation of forgery was articulated (and this is not even a predicate act under § 1961(1)). Moreover, there is no indication that the debts in question were illegal, and no injury has been suffered here that could have been caused by any violation of RICO alleged.

*Ergo*, Defendants' motion to dismiss this case is ALLOWED. All the other alleged violations are DISMISSED as they are not cognizable here under this cause of action.[2]

The Court specifically retains jurisdiction of this case and reserves the issue of imposition of sanctions under Fed.R.Civ.P. 11; costs under Fed.R.Civ.P. 54(d), 28 U.S.C. § 1919, and 28 U.S.C. § 1927 ("counsel's liability for excessive costs").

---

2. These allegations are: (1) extortion by filing suits to collect the debts owed (this is not extortion); (2) the allegations of forgery on a certificate of service in the state court of the sheriff's name; (3) delivering documents to the FBI or U.S. Attorney that dealt with the Plaintiff's financial situation to further the alleged intimidation and extortion (the above crimes relating to extortion require a *threat* to take a certain course of action unless the victim complies with the extortioner's demand. The Court fails to see

how the Plaintiffs could be the victims of extortion when it is alleged that Defendants *delivered* the documents in question, rather than *threatened* to deliver.) Moreover, the documents in question were delivered to the U.S. Attorney's office because the Defendants were *ordered* to turn them over pursuant to a grand jury subpoena issued January 6, 1982. This subpoena also stated that compliance could be accomplished by turning the records over to the FBI.